354 S.E.2d 590

**Charles E. MICHAEL**

v.

**Patrick G. HENRY, III, Judge, etc., et al.**

**No. 17340.**

Supreme Court of Appeals of West Virginia.

Feb. 25, 1987.

---

William S. Druckman, James A. McKowen, Charleston, for appellant.

Herbert G. Underwood, Clarksburg, Mary Lou Hill, Fairmont, William Richard McCune, Jr., Martinsburg, Gilbert Hall, Charles Town, for appellee.

**NEELY, Justice:**

This original prohibition presents three interesting discovery issues arising from a wrongful death action currently pending in the Circuit Court of Berkeley County. The plaintiff sued the West Virginia Board of Regents, James M. Carrier, M.D., Timothy Bowers, M.D., and Gerald T. Golden, M.D. for alleged malpractice resulting in the death of his wife. We granted a rule to show cause pursuant to Syl. Pt. 1 of *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979), which states:

> In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the overall economy of effort and money among litigants, lawyers and courts; however, this Court will

use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

On 22 October 1985, the defendant, Dr. James Carrier, served his first set of interrogatories on the relator (plaintiff below). Interrogatory No. 13 asked:

> State the name and address of each physician or other medically trained person who furnished you with an opinion that the defendants, Gerald T. Golden, M.D. or James M. Carrier, M.D., or both, were negligent in their care and treatment of the decedent, Fronia A. Michael and state the time and method of communication of such opinion.

Relator objected to this interrogatory as "privileged pursuant to Rule 26, *West Virginia Rules of Civil Procedure.*" The next interrogatory, No. 14, asked:

> Identify each person whom you expect to call as an expert witness at the trial of this case and state: (a) the subject matter on which the expert is expected to testify; (b) the substance of the facts and opinion on which the expert is expected to testify; (c) a summary of the grounds for each opinion.

The relator responded that his trial experts were "unknown at this time."

On or about 24 February 1986, Dr. Carrier filed a motion to compel the relator to answer these two interrogatories. On 31 March 1986, the respondent circuit judge, Patrick G. Henry, III, ordered the relator to answer Interrogatories No. 13 and 14. The relator subsequently supplemented his answer to Interrogatory No. 14, stating that Daniel L. Selby, C.P.A. would testify about relator's economic losses. The relator also stated that:

> With regard to liability and causation expert witnesses, plaintiff has been advised that potential experts cannot offer opinions until such time as the deposi-

tions of the defendant doctors and other medical personnel have been taken, pathology slides of Fronia Michael have been obtained, and other discovery completed. After such information has become available, this answer will be seasonably supplemented.

On 21 April 1986, Judge Henry reconsidered his order of 31 March 1986, ruling that the plaintiff need not disclose the identity of consulting experts who would not be called to testify at trial, and that the plaintiff need not disclose the identities of experts who would be called to testify at trial until 30 May 1986.

On or about 12 June 1986, Dr. Carrier filed a motion requesting that the court award sanctions based on the failure of the relator to identify his trial experts. However, no complaint was made in this motion that the relator had not identified his nontrial experts. Identical motions were filed on 20 June 1986 and 24 June 1986 by Dr. Golden and Dr. Bowers, respectively, although neither party had previously moved to compel discovery.

The motions came on for hearing on 14 July 1986. At that hearing Judge Henry indicated that the relator would not be permitted to depose the defendants until he had identified his trial experts. Judge Henry further ordered relator's counsel, William S. Druckman, to appear before him on 25 August 1986 to show cause why attorneys' fees should not be awarded in the amount of $400.00 to Mary Lou Hill, attorney for Dr. Carrier, $100.00 to Richard McCune, counsel for Dr. Golden, and $200.00 to Dr. Bowers. Judge Henry ordered Mr. Druckman to bring reports of any experts he did not intend to call at trial so that defense counsel could review them.

At the hearing on 25 August 1986, the court ordered the relator to provide the court with a sealed copy of the reports of his non-testifying experts. The court also awarded attorneys' fees of $200.00 to Mary Lou Hill, counsel for Dr. Carrier. Judge Henry indicated that he would hold under seal relator's experts' reports and suspend the attorneys' fee award for a period of thirty days so that the relator could seek a writ of prohibition here.

In his petition the relator alleges three abuses of trial court discretion: first, the circuit court should not have required the release of names and reports of his non-testifying experts; second, the circuit court should not have ordered him to reveal the identities of his trial experts before further discovery; and third, attorneys' fees should not have been awarded.

I

*W.Va.R.Civ.P.* 26(b)(4)(B) provides:

A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

The identical language of *Fed.R.Civ.P.* 26(b)(4)(B) was recently interpreted in *Barnes v. City of Parkersburg*, 100 F.R.D. 768 (S.D.W.Va.1984). In that medical malpractice case, the defendant sought to depose an expert consulted in anticipation of litigation whom the plaintiff did not intend to call as a witness at trial. The court granted the plaintiff a protective order, stating:

These experts are subject to a more restrictive discovery standard. For experts not expected to testify, the rule is that discovery can only take place upon a showing of "exceptional circumstances" under which it is "impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means" ... The reason for this rule is that while pretrial exchange of discovery regarding experts to be used as witnesses aids in narrowing the issues, preparation of cross examination and the elimination of surprise at the trial, there is no need for a comparable exchange of information regarding non-witness experts

who act as consultants and advisors to counsel regarding the course the litigation take.

*Id.* at 769, quoting *Mantolete v. Bolger,* 96 F.R.D. 179, 181 (D.Ariz.1982). The court held that the defendant had not met the "heavy burden" of showing exceptional circumstances incumbent upon a party seeking discovery of a non-testifying expert. *Id.* at 769–70.

In *Bailey v. Meister Brau, Inc.,* 57 F.R.D. 11 (N.D.Ill.1972), the defendants argued that "exceptional circumstances" existed because they were unable to obtain the opinions of the *plaintiff's* consulting experts by other means. The court rejected this argument, stating that "the Rule clearly contemplates a showing that a party has found opinions by *others* on the subject to be unavailable before he may obtain discovery from his opponent's retained expert who is not expected to be called to testify on the same subject." *Id.* at 14 (emphasis supplied).

■ In the case at bar, the respondents have not sustained the burden of showing exceptional circumstances justifying the discovery of relator's non-testifying experts. The respondents have available to them the decedent's medical records, and have failed to show that they are unable to retain an expert who might interpret these records and render an opinion regarding respondents' possible negligence. Because the respondents failed to meet their burden under Rule 26(b)(4)(B), the circuit court abused his discretion by requiring the relator to disclose the identities and reports of his non-testifying experts.

## II

Rule 26(b)(4)(A)(i) of *West Virginia Rules of Civil Procedure* provides:

A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

The great majority of courts that have construed this rule agree that expert witnesses need not be identified until the later stages of discovery. *See Jackson v. Kroblin Refrigerator Express, Inc.,* 49 F.R.D. 134, 135 (N.D.W.Va.1970) and cases there cited; Annot., 19 A.L.R.3d 1114 (1968). The Advisory Committee Note dealing with Rule 26(b)(4)(A) of the *Federal Rules of Civil Procedure* states in pertinent part: "Discovery is limited to trial witnesses, and may be obtained only at a time when the parties know who their expert witnesses will be." 48 F.R.D. 487 at 504. Rule 26(b)(4)(A) "is framed in terms of expectation, and therefore when an interrogatory is served before the party has determined who will be retained as an expert, the answer can state that fact." 4 Moore's Federal Practice, ¶ 26.66[3] at 26–215 (1984).

■ None of relator's experts who has offered an opinion on the possible negligence of the respondents wishes to testify at trial. Counsel for the relator has contacted other experts, but they will not commit themselves to testify at trial until certain discovery, including depositions of the defendants, has been completed. The relator therefore cannot identify his trial experts at this time. The good faith inability of one party to comply with a discovery request does not absolve the opposing party of its obligations under the discovery rules. *See Railroad Salvage v. Japan Freight Consolidated,* 97 F.R.D. 37, 41 (E.D.N.Y.1983); *Philpot v. Philco-Ford Corp.,* 63 F.R.D. 672 (E.D.Pa.1974). Consequently, the circuit court should not require the relator to identify his trial experts before deposing the respondents.

## III

■ We now address the issue of the attorneys' fees awarded by the trial judge. *W.Va.R.Civ.P.* 37(d) permits the trial court to assess attorneys' fees against a party failing to answer interrogatories "unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses un-

just." Although we do not generally condone disobedience to court orders, we find that the relator answered Interrogatory No. 14 to the best of his ability. Moreover, throughout these proceedings the relator has expressed a willingness to make the reports of his non-testifying experts available for *in camera* inspection by the court, thereby rebutting any accusation that he has withheld discovery in bad faith. Accordingly, we believe that the award of attorneys' fees was improper.

For the foregoing reasons, the writ for which relator prays is awarded, and further proceedings consistent with this opinion shall be had in the circuit court.

Writ awarded.